## Grievance of Chester A. Brileya and Phillip Terrill, Co-Administrators of the Estate of Donald Bishop

[515 A.2d 129]

No. 82-501

Present: Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.

Opinion Filed July 25, 1986

*Michael R. Zimmerman*, VSEA Staff Attorney, Montpelier, for Plaintiff-Appellant.

*Michael Seibert*, Assistant Attorney General, and *George Brooks* (On the Brief), Montpelier, for Defendant-Appellee.

**Peck, J.** This is an appeal from an order of the Vermont Labor Relations Board dismissing the grievance of Donald Bishop (grievant). We affirm.

Grievant was employed as an aide at Brandon Training School (BTS) working with the mentally retarded and developmentally disabled residents of that institution. He was dismissed by the Commissioner of Mental Health on January 8, 1982, for several reasons. The Vermont State Employees' Association, on behalf of grievant, appealed the dismissal to the Board, which upheld the dismissal on one of the grounds alleged: that grievant had abused a Brandon resident, W. E., by striking him in the foot with the resident's shoebrace, thereby fracturing his foot. This abuse constituted just cause for dismissal.

Before we address the arguments grievant makes on appeal, a review of the pertinent facts is necessary. The resident that grievant allegedly abused is a 34-year-old man who suffers from cerebral palsy and athetosis. He is unable to walk but can stand with assistance. He wears boots with braces attached to them. W. E. has osteoporosis, which means his bones are very brittle and weak. He is confined to a wheelchair. W. E. is unable to speak but does communicate by means of a word board, which allows him to spell or point out various words.

On the morning of October 12, 1981, grievant's duties at BTS included assisting W. E. in dressing. Grievant woke W. E. around 7:00 a.m., laid out his clothes, and left the room to attend to other residents. He returned a few minutes later and found W. E. had put on his shirt and pants. Grievant then attempted to put on W. E.'s shoes and braces which are one unit. W. E. was uncooperative and grievant was unable to get the braces on. W. E. then

wheeled himself to the dining room. Another BTS employee was present and observed W. E. having a tantrum. In accordance with W. E.'s habilitation plan, this employee isolated W. E. by taking him out of the dining room and into a day room where he remained unsupervised for half an hour. At 8:00 a.m., W. E.'s mother arrived and found him alone in the day room. She took him back to his room where she noticed that W. E. could not stand as usual. He seemed to be in pain when she tried to put his right shoe on. W. E. was taken to a physician who examined him but did not take x-rays. W. E.'s mother took him home for a visit. She noted during his visit that he could not bear weight on the foot and that he reacted as if in pain when she accidentally hit his foot. The next day W. E. was seen again by the doctor and x-rays were taken. Subsequently, he was diagnosed as having a fracture of his right talus bone. On October 13 and 14, W. E., through the use of his word board, told several staff members that grievant had hit his foot with his brace. This information, and other allegations not pertinent to this appeal, triggered an investigation which ultimately led to grievant's dismissal.

▮ On appeal of the Board's affirmance of the dismissal, grievant first argues that the Board shifted the burden of proof by taking into account the fact that grievant denied he injured W. E. and offered no explanation of how the injury occurred. This argument is without merit. There is no error in the Board's weighing grievant's credibility.

▮ The grievant next attacks four of the Board's findings as unsupported by the evidence. "Findings of fact of an administrative agency will not be set aside unless clearly erroneous . . . ." *Monro-Dorsey* v. *Department of Social Welfare*, 144 Vt. 614, 616, 481 A.2d 1055, 1057 (1984). The evidence is viewed in the light most favorable to the prevailing party and modifying evidence is excluded. *Beyel* v. *Degan*, 142 Vt. 617, 619, 458 A.2d 1137, 1138 (1983). If supported by credible evidence fairly and reasonably supporting them, the findings must stand. *In re Muzzy*, 141 Vt. 463, 470, 449 A.2d 970, 973 (1982).

Because grievant attacks findings closely intertwined with W. E.'s testimony, we produce the pertinent parts:*

Q. How did your foot get hurt?

---

* All W. E.'s testimony was spoken by an interpreter who read what W. E. pointed to on his word board.

A. Braces.

Q. How did the braces hurt your foot? What happened with the braces?

A. Hit, yes.

Q. Did someone hit you with the braces?

A. Yes.

Q. Can you spell the name of the person who hit you with the braces?
Can you point to the letters of that person's name?

A. D-O-N, yes.

Q. The person that hit you, his name was Don?

A. Yes.

Q. Can you remember the last name of the person who hit you?

A. —

Q. Let me ask you another question? Do you see the person who hit you in this room?

A. No.

Q. Did Don Bishop hit you with the braces?

A. Yes.

Q. Do you see Don Bishop in the room?

A. No.

Q. What was that?

A. No.

Q. Was the person—why did the person who hit you with the braces, why did he hit you?

A. —

Q. Can you find a word?

A. —

Q. Was the person that hit you angry at you when they hit you?

A. Yes.

Q. When you got hit and your foot got hurt, was it an accident?

A. Yes.

Q. Do you think that Don meant to hit you?

A. No.

Q. Would you repeat that answer. Did Don mean to hit you?

A. No.

Q. Did he tell you it was an accident?

A. No.

The first finding grievant attacks is that he was angry on the morning of October 12. He alleges that this finding is unsupported by the evidence because of inconsistencies in W. E.'s testimony which contradict this statement. However, when evidence is conflicting the trier of fact has the sole responsibility for determining the weight of the evidence and credibility of witnesses. *Whipple* v. *Lambert,* 145 Vt. 339, 340-41, 488 A.2d 439, 440 (1985).

The grievant argues that the finding as to anger can not stand in light of the further testimony that the hit was an accident. This issue was resolved by the Board in its finding relating to the special meaning of the word "accident" at BTS. The Board found that at BTS "accident" refers to any bad event that happens, but does not distinguish intentional from nonintentional behavior. We find no error in the Board's finding as to anger.

Grievant also attacks the finding relating to the meaning of "accident" as unsupported by the evidence. The record discloses that a BTS employee, the unit program supervisor, testified as to the use of the word at BTS; that it included incontinence, physical harm, or intentional injury of a resident by another resident. Furthermore, she testified that W. E.'s word board does not include the word accident, but W. E. generally understands all that is said to him. This evidence amounts to " 'more than a mere scintilla' " of evidence and fairly and reasonably supports the Board's finding. *In re Muzzy, supra,* 141 Vt. at 470-71, 449 A.2d at 973 (citations omitted).

The third finding under attack is the Board's explanation of why W. E. said at the hearing he did not see the person who hit him in the room. The Board found that W. E. so testified because (1) W. E.'s view of grievant was blocked by grievant's counsel and W. E.'s disability prevents him from tilting his head to the right; and (2) grievant had shaved his full beard and mustache, significantly altering his appearance. Grievant admits the accuracy of these two statements, but disputes that they are the reason why W. E. could not identify grievant. However, W. E. was asked if he saw Don Bishop in the room and he said "no," indicating that he either could not see grievant or did not recognize him. Grievant argues that this could not be true as the Board also found that before the hearing W. E.'s mother pointed out grievant to W. E. while at a restaurant. Again, these determinations of what weight

to give to the testimony of witnesses are for the trier of fact. *Whipple, supra*, 145 Vt. at 340-41, 488 A.2d at 440.

Grievant also argues that the State gave no indication at the hearing that W. E. was unable to physically see grievant, and by failing to do so, "lulled" grievant into believing that W. E.'s inability to identify him spoke for itself. The transcript discloses that the State did mention that it was not sure that W. E. could see grievant from where he was sitting. Furthermore, there was evidence in the record that grievant had significantly changed his appearance. We believe that it was within the Board's discretion to adopt this explanation of W. E.'s failure to identify grievant.

The last and most critical finding attacked is the Board's determination that grievant broke W. E.'s foot on October 12, 1981, by deliberately hitting him in the foot with his brace. Grievant argues the date, the identity of the person who inflicted the injury, and the method of the injury are not supported by the evidence. As to the date of the injury, the testimony of both W. E. and his mother reasonably supports October 12 as the day of the injury.

Regarding the Board's determination that grievant was the person responsible for the injury, again, the evidence reasonably supports the finding of the Board. Obviously, the Board believed W. E.'s testimony that it was grievant who hit him with his braces.

The grievant challenges the Board's finding that grievant *deliberately* struck W. E. Grievant relies upon W. E.'s testimony that it was an accident to contradict the finding of intentional injury. Grievant argues that because the Board found that W. E. was consistently truthful, the Board must accept W. E.'s testimony that it was an accident, and that grievant did not mean to hit him. Our conclusion above accepting the Board's finding as to the special meaning of "accident" negates this argument. But this in itself does not establish that the act was intentional. The Board had to rely upon circumstantial evidence to reach its conclusion that grievant deliberately hit W. E. Specifically, the Board relied upon its finding that grievant was angry when dressing W. E., and that it was unlikely that such a severe injury would have been caused accidentally. Circumstantial evidence may be relied upon to draw a reasonable inference. *Hall* v. *Miller*, 143 Vt. 135, 140,

465 A.2d 222, 225 (1983).

*Affirmed.*