## In re Hawk Mountain Corporation and Our World Sewer Association, Inc.

[542 A.2d 261]

No. 85-525

Present: **Allen, C.J., Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed January 8, 1988

*Paul S. Kulig* of *Keyser, Crowley, Banse & Facey*, Rutland, for Plaintiffs-Appellants.

*Corsones & Hansen*, Rutland, for Defendant-Appellee.

**Peck, J.** This appeal concerns the denial of a land use permit by the Environmental Board on the ground that a large sewage system would unduly pollute the Tweed River. We affirm in part and reverse in part.

On appeal, Hawk Mountain Corporation and Our World Sewer Association, Inc. challenge the Environmental Board's finding that the proposed development would result in undue water pollution. Appellants also question the Environmental Board's exercise of jurisdiction when it required appellants to obtain a water discharge permit from the Agency of Environmental Conservation (AEC), even though the AEC itself, following an unwritten practice, had not required one. Appellee, the town of Pittsfield (Pittsfield), cross appeals, arguing that the Board erred by ruling that Pittsfield had not rebutted the presumption created by appel-

lants' Certificate of Compliance that the project met the requirements of applicable health regulations.

On April 13, 1984, appellants applied to the District Environmental Commission (Commission) for a land use permit to expand by 60 lots an existing vacation home development in the town of Stockbridge, pursuant to 10 V.S.A. §§ 6001-6092 (Act 250). The Commission granted the permit. Pittsfield, the town in which the sewage system for the expansion is located, appealed to the Environmental Board for a de novo review pursuant to 10 V.S.A. § 6089(a). After one hearing before a panel of three Board members and another before the full Board, the permit was denied on August 21, 1985. This appeal followed.

The proposed development contemplates the enlargement of the existing sewage system to service an eventual total of 146 lots. The new system is to consist of a complex of eighteen leach fields, each measuring 3,000 square feet for treating, at maximum, 40,000 gallons of sewage per day. The site for this proposed system lies 200 feet to 400 feet above the Tweed River, which has been classified as a class B waterway by the Water Resources Board, pursuant to its authority under 10 V.S.A. chapter 47, §§ 1250-1384 (Water Pollution Control Act).[1] Two leach fields are currently on this proposed site. They serve 31 lots, and have been found not to function properly.

The Environmental Board found that the proposed sewage system would remove from the domestic wastewater eighty to ninety percent of various contaminants, eighty percent of bacteria, and an uncertain portion of viruses. The Board then found that the unremoved material would leach into the groundwater and, ultimately, be discharged into the river in identifiable, but highly diluted amounts.

Except for these general figures regarding removal rate, the Board found a lack of empirical evidence on the treatment capability of the proposed system. Appellants' evidence was derived from one test conducted in 1979 which used the rudimentary point permeability method. The record reveals that this method of testing is inaccurate and that the only reliable way to determine a leach field's efficiency is to simulate actual conditions by

---

[1] "Class B: Suitable for bathing and recreation, irrigation, and agricultural uses; good fish habitat; good aesthetic value; acceptable for public water supply with filtration and disinfection." 10 V.S.A. § 1252(a).

"loading" the disposal site with effluent and monitoring the filtration. Such a test was never conducted. In addition, appellants offered no evidence on the existing water quality of the river, thus precluding an assessment of the impact of the anticipated discharge on the river. On the basis of this paucity of evidence, the Board concluded that appellants did not carry their burden of proof on the question of undue water pollution.

To obtain a land use permit under Act 250, an applicant must prove that the project will not be detrimental to the public health, safety or general welfare. 10 V.S.A §§ 6087-6088. Before concluding that a development will not be harmful, the Environmental Board must find, on the basis of several criteria, that it will not result in undue water pollution. 10 V.S.A. § 6086(a)(1). In making this determination the Board must consider the applicable health and environmental conservation regulations. *Id.*

In the present case appellants presented to the Environmental Board a Certificate of Compliance obtained in 1982 from the AEC which established a rebuttable presumption, pursuant to 10 V.S.A. § 6086(d) and Environmental Board Rule 19 (1984), that the project complies with applicable health regulations and that it will not cause undue water pollution. The Certificate of Compliance also created a rebuttable presumption that the proposed leach field complex complies with regulations governing the land application of waste disposal. See *In re Wildlife Wonderland, Inc.*, 133 Vt. 507, 514-15, 346 A.2d 645, 649-50 (1975); see also Vermont State Board of Health Regulations, ch. 5, subchapter 10, part III. The Environmental Board ruled that the presumption in favor of appellants with regard to water pollution had been rebutted by appellee, and the Board denied appellants' Act 250 land use permit on the ground that the project would result in undue water pollution.

The Board found that the proposed development did not meet Water Resources Department regulations, and thus criterion one of 10 V.S.A. § 6086 had not been met. Appellants' proposed complex of leach fields was found by the Board to discharge domestic wastes containing pathogenic organisms into the Tweed River in violation of Water Resources Department regulations. See Vermont Water Quality Standards Regulations, § 11 ("Discharges of domestic waste, or wastes which contain pathogenic organisms prior to treatment shall not be permitted in Class B waters regardless of degree of treatment."); see also 10 V.S.A. §§ 1252, 905

(enabling legislation allowing the Water Resources Board to promulgate such regulations). In addition, the Board concluded that since wastes would be discharged into the Tweed River a discharge permit is required under 10 V.S.A. § 1263, and unless appellants complied with this requirement, no Act 250 land use permit could be granted. See 10 V.S.A. § 6086(a)(1).

On appeal, appellants challenge the Board's conclusion that they failed to sustain their burden of proof on the issue of undue water pollution. In contesting this conclusion, appellants attack findings of fact with respect to the treatment capabilities of the leach field system, the method used for testing the soil, the credibility of an agency expert, and whether appellants failed to prove that no undue water pollution would occur because of the lack of evidence as to the existing quality of the river's water.

In Act 250 proceedings the findings of the Board, if supported by substantial evidence on the record as a whole, shall be conclusive upon this Court. 10 V.S.A. § 6089(c). The evidence is viewed in a light most favorable to the prevailing party and modifying evidence is excluded. See *In re Brileya*, 147 Vt. 280, 282, 515 A.2d 129, 131 (1986). Moreover, it is not for this Court to reweigh conflicting evidence, reassess the credibility or weight to be given to particular testimony, or determine on its own whether the factual decision is mistaken. *In re Wildlife Wonderland, Inc.*, 133 Vt. at 511, 346 A.2d at 648.

Upon examination of the record we find substantial support for the Board's findings. See *id.* In addition, with regard to the Board's concern for the existing quality of the river's water, we note that the Environmental Board must of necessity take into consideration the existing condition of the river since the standards for Class B waters require an analysis of the effect of pollutants on the particular water's environment. See Vermont Water Quality Standards, § 5(B)(10)(2). Thus we also find that the Board properly required evidence of the existing water quality of the Tweed River, and the Board did not abuse its discretion by concluding that appellants failed to meet their burden in this regard.

Appellants also argue that the Environmental Board exceeded its authority by requiring appellants to seek a water discharge permit from the AEC when a division of this agency, following an informal practice, told appellants that no permit was necessary.

We find that the Board did not exceed its authority by requiring the water discharge permit.

■ Appellants contend that the Water Resources Board's water quality standards and discharge permit requirements are not Water Resources and Environmental Engineering regulations within the meaning of 10 V.S.A. § 6086(a)(1)(B), and were therefore improperly considered by the Environmental Board. 10 V.S.A. § 6086(a)(1) provides that prior to granting a land use permit the Environmental Board must determine that the proposed development "[w]ill not result in undue water . . . pollution. In making this determination it shall *at least* consider . . . the applicable health and water resources and environmental engineering department regulations." (Emphasis added.)

First, we note that the purposes of Act 250 are broad: "to protect and conserve the environment of the state." *In re Juster Associates*, 136 Vt. 577, 580, 396 A.2d 1382, 1384 (1978). To achieve this far-reaching goal the Environmental Board is given authority to conduct an independent review of the environmental impact of proposed projects, and in doing such the Board is not limited to the considerations listed in Title 10. See 10 V.S.A. § 6086(a)(1). Thus, even if we held that water quality standards are not Water Resources and Environmental Engineering Department regulations, the Environmental Board could still properly consider them when determining whether a land use permit should be granted.

■ In addition, we note that Water Resources Board regulations are administered by the Water Resources and Environmental Engineering Department. 3 V.S.A. § 2873. The Water Resources Board, authorized to create water classifications and quality standards, was created by the same act that created the Department of Water Resources and Environmental Engineering. 10 V.S.A. §§ 901-906. The Department of Water Resources and Environmental Engineering (now incorporated into the Department of Environmental Conservation, 3 V.S.A. § 2873) is not authorized to promulgate regulations, but is charged with administering the water resources regulations and programs created by Title 10, which include the Water Resources Board's water classification program and discharge permit requirements. 3 V.S.A. § 2873. In light of this administrative scheme, water resource regulations administered by the Department of Water Resources and Environmental Engineering come within the purview of 10 V.S.A. § 6086(a)(1), and are properly considered by the Environmental

Board before a land use permit is granted. In addition, we note that appellants' view that the Board may not consider water resource regulations would compel the Board, whose purpose is to protect the waters of the state, to ignore the most directly pertinent regulations concerning water pollution. Under these circumstances, it is clear that appellants have failed to demonstrate any compelling signs of error in the Board's interpretation of the law.

We also hold that the Environmental Board did not exceed its authority by requiring appellants to obtain a water discharge permit pursuant to 10 V.S.A. § 1263, although the AEC had waived this requirement. Act 250 sets up concurrent jurisdiction between the various state environmental agencies and the Environmental Board. See 10 V.S.A. § 6082. However, the legislative scheme indicates that the legislature intended to confer upon the Board powers of a supervisory body in environmental matters. For example, although 10 V.S.A. § 6082 provides that the permit required under Act 250 does not replace permit requirements from other state agencies, 10 V.S.A. § 6086(d) provides that the Environmental Board is not bound by the approval or permits granted by the other agencies. Permits and Certificates of Compliance from other agencies create a presumption that the project satisfies the relevant 10 V.S.A. § 6086(a)(1) criteria; however, the Board must conduct an independent review of the proposed development and may deny the Act 250 permit if it finds the Certificate of Compliance or other required permits were improvidently granted. 10 V.S.A. § 6086(d). In this case the Board concluded that the sewage system did not comply with the applicable Water Resources Board regulations and found that the system would discharge wastes into the river. Upon concluding that the system would create a discharge into the river, the Board properly held that a water discharge permit would consequently be necessary pursuant to 10 V.S.A. § 1263. Although the Board's determination is at odds with an unofficial practice of a division of the AEC, we cannot, on that basis, reverse the Board's ruling.

The last matter on appeal is Pittsfield's challenge to the Board's ruling that the town had not rebutted the presumption of compliance created by the Certificate submitted by appellants. We reverse on that basis.

Pursuant to Environmental Board Rules 19(A) and (C) (1985), promulgated by the Environmental Board in compliance with 10 V.S.A. § 6086(d), the Certificate of Compliance creates a rebutta-

ble presumption that the leach field complex will not result in undue water pollution. This presumption is merely "locative," placing the burden of going forward with the evidence on the party against whom it operates as a rule of law, but operating without any independent probative value. See *Rutland Country Club, Inc.* v. *City of Rutland,* 140 Vt. 142, 145-46, 436 A.2d 730, 731 (1981). The presumption disappears when credible evidence is introduced fairly and reasonably indicating that the real fact is not as presumed. See *id.* at 145, 436 A.2d at 732. The standard by which the trier must measure the attempt to rebut the presumption is not one of credibility, but rather of admissibility: "Does the fact offered in proof afford a basis for a rational inference of the fact to be proved?" *Kruse* v. *Town of Westford,* 145 Vt. 368, 372, 488 A.2d 770, 772 (1985) (citing *Tyrrell* v. *Prudential Insurance Co. of America,* 109 Vt. 6, 21, 192 A. 184, 191 (1937)).[2]

To surmount the presumption favoring appellants, Pittsfield introduced evidence through expert testimony that the proposed sewage system did not comply with several of the health regulations regarding waste disposal, including the standards for distances between leach field, for emergency replacement areas, and for manhole distribution. The evidence offered allows a rational inference to be drawn that the system did not comply with the regulations, and thus, was likely to result in undue water pollution. Upon introduction of Pittsfield's evidence, the presumption disappeared, and in accordance with 10 V.S.A. § 6088(a), the burden of proof of compliance with the regulations should have returned to appellants. See *In re Wildlife Wonderland, Inc.,* 133 Vt. at 511, 340 A.2d at 648.

*Affirmed in part and reversed in part.*

---

[2] The Board adopted these standards regarding presumption in *Burlington Street Department,* 4C0516-1-EB, April 13, 1983.