**SOUTHVIEW ASSOCIATES, LTD., Southview at Stratton Partners**

v.

**INDIVIDUAL MEMBERS OF THE VERMONT ENVIRONMENTAL BOARD; Ferdinand Bongartz, Lixi Fortna, Arthur Gibb, Samuel Lloyd, William Martinez, Charles Storrow, Steve Wright, and the Chairman of the Environmental Board, Elizabeth Courtney.**

Civ. No. 91–200.

United States District Court, D. Vermont.

Dec. 6, 1991.

Peter W. Hall, Abell, Kenlan, Schwiebert & Hall, Rutland, Vt., for plaintiffs.

Ronald A. Shems, Vt. Atty. Gen.'s Office, John H. Hasen, Office of Atty. Gen., Montpelier, Vt., for defendants.

## OPINION AND ORDER

BILLINGS, District Judge.

On August 27, 1991, defendants, all present members of the Vermont Environmental Board, filed a motion to dismiss the complaint of plaintiffs Southview Associates Ltd. and Southview at Stratton Partners ("Southview"). In support, defendants allege that the Eleventh Amendment to the United States Constitution precludes federal court jurisdiction and that the matter is not ripe for review. A hearing was held on November 27, 1991. For the reasons stated herein, defendants' motion to dismiss is granted.

## Background

Southview is the owner of approximately 88 acres of land in the towns of Stratton and Jamaica, Vermont. In February of 1985, Southview submitted an Act 250 application to the District II Environmental Commission ("Commission") for a state land use permit—an Act 250 permit—for their proposed 33 lot development scheme. Hearings were held between February 1985 and April 1986. The Commission denied Southview's Act 250 permit application on the basis that criterion 8(a) of Act 250 was not satisfied.

Criterion 8(a) aims to preserve necessary wildlife habitats and endangered species in development projects. Specifically, the Commission, on evidence and information provided by the Vermont Department of Fish and Wildlife ("Department"), determined that a deeryard area consisting of approximately 280 acres overlapped with 44 acres of Southview property, and that 10 of these 44 acres were involved in the proposed development. The Commission concluded that Southview's proposed 33 lot development would significantly impair the deeryard, and therefore denied Southview an Act 250 permit.

Southview appealed the Commission's ruling to the Vermont Environmental Board ("Board") on or about May 14, 1986. The Board denied Southview's appeal on June 30, 1987 due to the predicted adverse impact the development would have on the deeryard. Southview then appealed the Board's decision to the Vermont Supreme Court. The Court affirmed the Board's decision in In re Southview Associates, 153 Vt. 171, 569 A.2d 501 (1989).

In its present and lengthy complaint, Southview is suing the individual members of the Board, seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, the due process and equal protection clauses of the Fifth and Fourteenth Amendments to United States Constitution and 28 U.S.C. §§ 2201 and 2202. Essentially, Southview alleges that the Board, by denying Southview's Act 250 permit for its 33 lot development scheme in order to protect the deer, has deprived Southview of the economic use of its property. Southview further claims that the Board's application of criterion 8(a) of Act 250 to the specific 33 lot proposed development plan was unconstitutional.

## Discussion

Defendants raise two arguments in its motion to dismiss that allegedly bar the present action by Southview—the Eleventh Amendment and the ripeness doctrine. We agree with defendants that Southview's action is not yet ripe for review. In order for this court to exercise jurisdiction over Southview's claims, there must be a case or controversy within the meaning of Article III of the United States Constitution. Because we find that the ripeness issue is dispositive, we address only that issue and do not reach the Eleventh Amendment question.

### I. Ripeness Doctrine

In Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court set forth a two-part test that must be satisfied before a regulatory taking claim will be ripe for review: (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" and (2) the plaintiff has sought compensation if the state has provided a "reasonable, certain and adequate provision for obtaining compensation." Id. at 186, 194, 105 S.Ct. at 3116, 3120. Southview admits that it has no pending application for an Act 250 permit; however, Southview argues that because the present matter is a "physical invasion" type takings case and because it is claiming a deprivation of due process and equal protection rights, there is no requirement that it resubmit another application. Southview relies on Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398 (9th Cir.1989) for the proposition that when an equal protection or due process challenge is made in cases where a physical invasion of property has occurred, the first prong of the Williamson test is met auto-

matically and the second prong is inapplicable. *Id.* at 1402, 1404.

We disagree with Southview's assertion that the *Williamson* two-part test is inapplicable for two reasons: (1) Southview has failed to sufficiently plead either a substantive due process or equal protection violation, and (2) this is a regulatory takings case and not a physical invasion case.

■ First, we do not believe that Southview has sufficiently alleged a substantive due process violation. In order to establish such a violation, Southview must show that the Board's action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa Lake*, 882 F.2d at 1407, quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). Nowhere in its complaint does Southview allege that the individual members of the Board acted arbitrarily, deliberately, maliciously or irrationally in denying Southview's Act 250 permit application for the 33 lot development plan. Southview is merely unhappy with the Board's decision that maintenance of the deeryard on Southview's property is in the public interest.

■ Likewise, we do not believe that Southview has sufficiently alleged an equal protection violation. In its complaint, Southview contends that Act 250's exclusion of certain property owners from Act 250 coverage violates the equal protection clause.[1] Again, Southview has made no showing that these statutory exclusions resulted from arbitrary or irrational decision making. As with its substantive due process claim, Southview cannot merely allege on the face of the complaint that the forced physical invasion by the deer violates the due process and equal protection clause. Southview has failed to support its bare allegations with adequate facts.

■ Second, even assuming that Southview successfully alleged facts to constitute a due process or equal protection violation, we believe that the Board's denial of Southview's Act 250 permit did not result in the type of forced "physical invasion" contemplated in *Sinaloa Lake*. In that case, a physical invasion occurred when defendants entered onto plaintiff's land, breached a dam and destroyed plaintiff's lake. 882 F.2d at 1401. Southview's simple allegation that the deer have physically invaded its property does not necessarily make this a physical invasion type case.

We find that this situation more closely approximates a regulatory takings case than a physical invasion case because it involves the diminution of the value and usefulness of Southview's property through regulatory action. *See Hall v. City of Santa Barbara*, 833 F.2d 1270, 1275 (9th Cir.1986). In drawing this distinction, we note that the existence of deer on Southview's property does not resemble the typical physical occupation case. *See Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). In *Penn Central*, a physical invasion case, New York City prohibited Penn Central from building a 55 story office tower over its Grand Central Terminal. In our situation, the Board, in denying the Act 250 permit, has not permanently occupied Southview's private property so as to effectively destroy Southview's rights to use, possess and dispose of its property. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435–36, 102 S.Ct. 3164, 3175–76, 73 L.Ed.2d 868 (1982). Southview still retains numerous possessory rights in the property. In sum, we find that the existence of deer on Southview's property does not resemble a typical physical invasion case and is better characterized as a regulatory takings case. For all of these reasons, we find that the *Williamson* two-part test is applicable to this situation and the *Sinaloa Lake* exception to that test is inapplicable.

1. Act 250 excludes certain groups of landowners from its reach. For example, owners who subdivide their property into fewer than 10 lots within a 5 year period or owners who construct less than 800 feet of road for access to their lots are excluded from Act 250 coverage. Further, loggers, orchardists and farmers who develop their properties related to their respective commercial enterprises are not subject to Act 250 jurisdiction.

## II. Application of the Williamson Test

### A. *First Prong*

■ The first requirement of the *Williamson* two-part test requires the government entity charged with implementing the regulations to reach a final decision on the application of the regulations to the property at issue. 473 U.S. at 186, 105 S.Ct. at 3116. This requirement is necessary because if a property owner has not submitted a new application for a less intensive development plan, the court cannot determine with certainty that an owner has lost all economic benefit of the property because the new plan may have been approved. *Id.* at 187, 190–91, 105 S.Ct. at 3117, 3118–19. *See also Agins v. City of Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *Penn Central,* 438 U.S. at 104, 98 S.Ct. at 2646.

Here, the Board prohibited Southview from building 33 housing units on a specific location of its property because of the predicted adverse impact on the deeryard. Importantly, however, the Board stated that:

> The State testified that there are several alternative sites that could be developed with much less impact on the deeryard. The Board is not persuaded that [Southview] has thoroughly investigated the possibility of less intensive development in other areas of the site.

Complaint, Exhibit I, p. 10. The Board also found that Southview failed to investigate "all feasible and reasonable means of preventing or lessening the destruction and imperilment of the deer habitat." *Id.* Southview has declined to accept the Board's invitation to submit alternative development plans. If this court were to address Southview's claims at the present time, we would be required to speculate about possible development schemes that Southview may have proposed and whether the Board would have responded favorably. In determining if Southview has been deprived of its economic use of the property, we cannot base our decision on imaginary applications.

Southview argues that the futility doctrine, an exception to the ripeness requirement, excuses Southview from further submissions of alternate development proposals. In support, Southview first alleges that despite good faith negotiation attempts with officials at the Department, the officials have consistently stated that they will oppose any development on Southview's property. Thus, Southview claims further plan submissions would be futile. Further, Southview contends that it already reduced its development plan once from 78 units to 33 units, and that anything less than 33 units would defeat its reasonable investment-backed expectations in the property. We find both of Southview's contentions to be without merit.

First, Department officials do not stand on the same footing as Board members; the former do not make final decisions on whether Act 250 permits will be granted but rather supply information and evidence which the Board may or may not consider. The Board sits as the final decision maker in environmental matters in Vermont. *In re Hawk Mountain Corp. and Our World Sewer Ass'n, Inc.,* 149 Vt. 179, 185, 542 A.2d 261 (1988). Thus, the fact that Department officials reiterated to Southview their intent to oppose any development on Southview's property does not by itself demonstrate that submission of alternate development plans will be futile. The Board explicitly encouraged Southview to submit alternate plans and never implied that it would oppose any development on the property.

Second, we find that Southview must explore alternate development plans before it can reasonably conclude that it cannot realize the profit from the property which it once envisioned. The Board found that the maximum number of units that could be built on the property was 33 due to sewage capacity. Complaint, Exhibit I, p. 3. Consequently, Southview's original plan to build 78 units would have failed regardless of any Act 250 permit denial, and Southview's implication that it trimmed its 78 lot plan to a 33 lot plan in an effort to compromise is misleading. We agree with the court in *Southern Pacific Transp. Co. v. City of Los Angeles,* 922 F.2d 498 (9th Cir.1990) which stated: "[t]he rejection of

exceedingly grandiose development plans is insufficient to show that the local agency does not allow reasonable development." *Id.* at 503. Southview must propose alternate development plans before this court will rule that Southview has been deprived of the economic use of its property. Because alternate development plans have not been submitted, we find that there has been no final decision by the Board concerning the application of Act 250 to the Southview property which would satisfy the first prong of the *Williamson* test.

### B. Second Prong

 The second prong of the *Williamson* two-part test requires an owner to seek compensation from the state if the state has a "reasonable, certain and adequate provision for obtaining compensation." 473 U.S. at 194, 105 S.Ct. at 3120. This hurdle is required because the Fifth Amendment only proscribes the taking of property without just compensation, and unless an owner has sought compensation, there is no claim for a taking. *Id.* at 194–95.

Southview admits that it has not sought compensation in the Vermont state court system. However, Southview bases this failure on its allegation that neither Act 250 nor any other Vermont statute provides a reasonable, certain or adequate procedure to obtain compensation. We disagree. Southview has never obtained a decision from the Vermont state courts that compensation is disfavored or even unavailable. To the contrary, although Vermont does not provide a specific statutory procedure by which to obtain compensation, Vermont courts have certainly recognized the right of a property owner to bring an action for compensation pursuant to Article II of the Vermont Constitution when there has been a taking of one's property for public purposes. *See Timms v. State of Vermont,* 139 Vt. 343, 428 A.2d 1125 (1981); *Sargent v. Town of Cornwall,* 130 Vt. 323, 292 A.2d 818 (1972). The *Williamson* test does not require that the compensation procedure be statutory in nature. Southview does indeed have a fo-

rum—the Vermont Superior Court—in which to pursue its compensation action. Consequently, Southview has failed to meet the second prong of the *Williamson* test.

### Conclusion

We conclude that Southview has failed to meet the *Williamson* two-part test because the Board has not rendered a final decision as to the application of Act 250 to the Southview property, and Southview has failed to seek compensation within the Vermont state court system. Therefore, Southview's claims are not ripe. Thus, defendants' motion to dismiss Southview's complaint is hereby GRANTED.

SO ORDERED.