# STATE OF VERMONT
## SUPERIOR COURT - ENVIRONMENTAL DIVISION

| | | |
|---|---|---|
| **Pizzagalli Properties,  LLC** | } | |
| **Mountain View Park SD Act 250** | } | **Docket No. 114-8-12 Vtec** |
| | } | |

### Decision on the Merits

Pizzagalli Properties, LLC (Applicant) obtained Act 250 Land Use Permit #4C1153-6 (Corrected) (the LUP) from the State of Vermont District 4 Environmental Commission for the construction of a two-story, 45,000 square foot medical office building on Lot #6 of the Mountain View Office Park subdivision (the Project).  Lot #6 is located at 119 Tilley Drive in the City of South Burlington (the Property).  Brian Armstrong and Lora Wilson (Appellants), the owners of an adjoining parcel at 50 Old Farm Road, South Burlington, appeal the LUP and raise two questions for the Court to review.   Under Act 250, projects are reviewed based on the ten criteria of 10 V.S.A. § 6086(a)(1)–(10).  Before granting approval under Act 250, we must find that the project complies with these criteria.  Appellants' appeal focuses our review on Criterion 1(B) – Waste Disposal, specifically relating to the construction of an earth berm near Appellants' property to serve as a visual barrier to the Project.  Appellants assert that this berm will potentially cause surface water runoff impacts to Appellants' property.

The Court conducted a site visit to the Property on the morning of the January 10, 2013 merits hearing.  The hearing was held at the Vermont Superior Court, Chittenden Civil Division, Burlington, Vermont.  Pizzagalli Properties, LLC and its lawyer, W. Scott Fewell, Esq., appeared at the site visit and trial.  Brian Armstrong, Lora Wilson, and their lawyer, Thomas F, Heilmann, Esq., were also present at the site visit and trial.  Several of the parties' witnesses attended the site visit and testified during the merits hearing.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Applicant seeks Act 250 approval for the construction of a two-story, 45,000 square foot medical office building on Lot #6 of the Mountain View Office Park subdivision.

2. Applicant owns Lot #6, which encompasses 13.53 acres and is located at 119 Tilley Drive in South Burlington, Vermont.

3. Appellants own an adjoining parcel at 50 Old Farm Road, South Burlington, which serves as their residence.

4. In advance of seeking an Act 250 Land Use Permit, Applicant applied for and was awarded local approval by the Development Review Board (DRB) of the City of South Burlington.

5. During the local review process, Appellants raised concerns that the Project would have aesthetic impacts on their adjoining residence.

6. Applicant and Appellants discussed options for reducing aesthetic impacts, especially those intended to screen Appellants' back yard and pool from the Project.

7. The parties considered a few screening options, including a fence and a cedar hedge, but ultimately agreed on an above grade soil berm with a hedge row planted along the ridgeline of the berm.

8. Near the conclusion of the local review process, Appellants raised new concerns relating to the proposed berm. Specifically, Appellants raised the issue of increased surface water runoff impacting their abutting property.

9. At the conclusion of the local review process, the DRB required Applicant to ensure that the berm/hedge did not cause runoff to the detriment of Appellants' property and provided some flexibility to Applicant to satisfy this concern.

10. In addition to its application for an Act 250 permit for the Project, Applicant has obtained the following additional state permits:

   a. Individual Stormwater Discharge Permit No. 3805-INDS.4 (Operational);

   b. Authorization to discharge under General Stormwater Discharge Permit No. 3805-INDS.4A;

   c. Construction General Permit 3-9020 (Amended 2008);

   d. Authorization of Notice of Intent No. 3805-9020; and

   e. Wastewater System and Potable Water Supply Permit No. WW-4-3801.

11. Applicant completed a baseline conditions study of the Property and Appellants' property. This included a site visit, investigation of existing topography and surface water runoff conditions on both properties, and investigation of the location of Appellants' septic system.

12. The elevation of Appellant's septic system and the elevation of the existing conditions of the area where the berm is proposed to be located are approximately equal. If the berm, as

designed, is put into place, the berm's elevation will generally be 4 feet higher than existing conditions.

13. The berm's distance from Appellant's property ranges from 15 to 20 feet, measured from the toe of the slope of the berm to the property boundary.

14. As designed, the berm is approximately 100 feet along its top ridgeline, is dogleg shaped, and its height is approximately 4 feet above grade.

15. The distance from the center of the ridgeline to its west toe is approximately 23 feet at its widest and 18 feet at its narrowest. The distance from the center of the ridgeline to its east toe is approximately 12 feet at its narrowest.

16. The total area of the berm is between 1800 to 2300 square feet.

17. The berm will be seeded, mulched, and ultimately fully covered with grass and a row of hedges located along its ridgeline.

18. The slope of the berm is roughly 4 to 1, allowing it to be mowed.

19. When designing the berm and its location, Applicant took into consideration runoff concerns.

20. Runoff from the northwestern side of the berm will flow to Appellants' property; however, under present conditions without the berm, runoff from this same area already flows to Appellants' property.

21. The berm will not cause or direct additional runoff to Appellants' property. The berm will reduce runoff upon Appellants' property by decreasing the area of the upgradient watershed.

22. Appellants' existing septic system is a fairly old, rudimentary system. Appellants have experienced problems with their septic system and have had it pumped out in the past. Appellants do not believe that their system has ever failed.

23. The southeast corner of Appellants' property presently experiences continually wet conditions. This area is difficult to mow, and Appellants have had difficulty with cedar trees dying in this area.

## Conclusions of Law

In the appeal now before us, the parties' dispute centers on a soil berm proposed for construction in close proximity to Appellants' property and intended to provide the Appellants with a visual screen of the Project. The District Commission conditioned its grant of an Act 250

3

land use permit on construction of the berm, pursuant to Criterion 1(B) – Waste Disposal. The berm condition states as follows:

> Prior to substantial completion of construction of the Project, the permittee shall construct an earth berm to the northwest of the proposed building and ensure that the berm will not direct additional runoff onto the adjacent property located at 50 Old Farm Road (Appellants' Property). The berm shall be modified, as necessary, to provide a continued visual barrier and to direct runoff away from the adjacent property.

Land Use Permit 34C1153-6 (Corrected), Condition #26.

10 VSA 6086(a)(1)(B), entitled "Waste disposal," provides that "[a] permit will be granted whenever it is demonstrated by the applicant that, in addition to all other applicable criteria, the development will meet any applicable health and environmental conservation department regulations regarding the disposal of wastes." Criterion 1(B) does not directly relate to surface runoff issues. In the case before us, however, surface runoff could potentially impact Appellants' neighboring property, including Appellants' septic system. Furthermore, the District #4 Environmental Commission decision on appeal imposes Condition #26 under Criterion 1(B). For these reasons, Appellants' Statement of Questions raises their concerns over the berm and surface runoff as falling under Criterion 1(B).

In pursuit of its compliance with Criterion 1(B), Applicant has obtained the following state permits: (1) Wastewater System and Potable Water Supply Permit No. WW-4-3801 issued on March 1, 2012; (2) Stormwater Discharge Permit No. 3805-INDS.4A issued on June 13, 2012; and (3) Construction General Permit 3-9020 (Amended 2008) issued on May 11, 2012. Appellants do not offer evidence to dispute that Applicant obtained these permits, nor do Appellants offer evidence to contradict or otherwise challenge the validity of these permits.

Applicant asserts that these other state permits constitute a presumption pursuant to Act 250 Rule 19 that the Project and its "disposal of wastes" meets applicable Environmental Protection Rules, and therefore, Appellant asserts that the Project satisfies Act 250 Criteria 1(B). We agree that state permits can and do create a presumption of compliance with Act 250 criteria. See Re: Brewster River Land Co., LLC., No. 5L1348-EB, Findings of Facts, Conclusions of Law, and Order, at 11 (Vt. Envtl. Bd. Feb. 22, 2001) (finding that ANR's issuance of a storm water permit creates a rebuttable presumption under Criterion 1(B)). Appellants assert, however, that the soil berm imposed under Criterion 1(B) will create surface water runoff impacts to the detriment of their adjoining property and specifically their septic system, and therefore, Appellants challenge the appropriateness of Condition #26 of the LUP specifically.

4

Although Appellants did not have an engineer or consultant review their concern, Appellants testified as to their concern of potential adverse impacts to their property from the runoff.

Based upon our review of Applicant's other state permits, it does not appear that these permits specifically review the potential impact of the proposed berm on Appellants' property. We therefore find that Appellants have effectively rebutted Applicant's presumption of compliance with Criterion 1(B). Thus, the burden of proof with respect to the applicable criteria shifts back to Applicant, and the permits which created the presumption serve only as evidence that the project complies with Criterion 1(B). See Herbert and Patricia Clark, No.1R0785-EB, Findings of Fact, Conclusions of Law, and Order, at 25–27 (Vt. Envtl. Bd. Apr. 3, 1997); In re Hawk Mountain Corp., 149 Vt. 179, 185–86 (1988). We must therefore further consider the evidence offered by the parties relating to the proposed berm to determine whether the Project complies with Criterion 1(B).

Applicant's professional engineers designed and located the soil berm for the aesthetic benefit of Appellants. In so doing, Applicant's engineers took into consideration potential surface water runoff impacts to Appellants' adjoining property. Thus, in designing and locating the berm, Applicant's engineers have ensured that no additional runoff will impact Appellants' property.

Specifically, Applicant's engineers completed a current conditions study, without the berm present, to understand current surface runoff flow patterns. Applicant's engineers understood that the local land use approval, obtained for the Project prior to the Act 250 application and review, required that Applicant ensure that the berm did not add runoff to Appellants' property. Therefore, in advance of the Act 250 review, Applicant's engineers needed to obtain baseline conditions to be able to design a berm that would comply with the local approval directive. This study included locating Appellants' septic system to further understand how to ensure that the berm did not adversely impact Appellants' property, including the septic system. Based upon Applicant's engineer's baseline study, Applicant determined that runoff in the general vicinity of the Project and Appellants' property flows in a southerly direction, and that as the runoff approaches Appellants' property, it flows in a southwesterly direction. Applicant's Exhibit D illustrates the watershed area at issue in this proceeding.

After compiling the existing runoff conditions, Applicant's engineers superimposed the proposed berm and predicted the likely impact to runoff with the berm in place. Exhibit D

illustrates the engineer's credible conclusion that the berm will reduce the watershed area, and thus, reduce the amount of runoff impacting Appellants' property. As runoff within the southeastern portion of the specific watershed area flows in a southwesterly direction, the northeastern section of the berm will intercept surface runoff and redirect it southerly away from Appellants' property. The berm's overall effect will be to reduce runoff to or upon Appellants' property as compared to current conditions..

### Conclusion

For the reasons discussed above, we conclude that Condition #26 of the LUP sufficiently and appropriately addresses Appellants' concern that the berm will not cause additional runoff to flow onto or adversely impact Appellants' property in compliance with Criterion 1(B). Furthermore, we conclude that Condition #26 of the LUP requires that to the extent additional runoff and a corresponding adverse impact to Appellants' property is realized from the construction and existence of the berm, Applicant is required to modify the berm, as necessary, to direct any additional runoff away from Appellants' property.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Done at Burlington, Vermont, this 17th day of April, 2013.

_____

Thomas G. Walsh, Environmental Judge