STATE OF VERMONT

SUPERIOR COURT

ENVIRONMENTAL DIVISION
Docket No. 169-12-16 Vtec

| Diverging Diamond Interchange A250 |
| --- |

**ENTRY REGARDING MOTION**

Title:          Motion for Party Status and Standing (Motion 1)
Filer:          R.L. Vallee, Inc.
Attorney:    Jon T. Anderson
Filed Date:   December 22, 2016

Response filed on 01/06/2017 by Attorney William H. Rice for SOV AOT
        Opposition
Response filed on 01/30/2017 by Attorney Alexander J. LaRosa for R.L. Vallee, Inc.
        Reply in Support

This is an appeal by R.L. Vallee, Inc. (Vallee) from an Act 250 decision granting approval to the Vermont Agency of Transportation (VTrans) to construct a Diverging Diamond Interchange and related improvements (the DDI project) at I-89 Exit 16 in Colchester. The matter now before us is a motion by Vallee requesting party status under Criteria 1, 1(B), and 1(E).

In the proceeding below, the District Commission granted Vallee party status as to a number of Act 250 criteria, but Vallee did not retain party status as to Criteria 1, 1(B), and 1(E). A person who participates in the proceeding before the District Commission but fails to retain party status for specific criteria at the end of that proceeding may appeal that denial of party status. 10 V.S.A. § 8504(d)(2)(B). Persons bringing a claim under 10 V.S.A. § 8504(d)(2) "must assert that claim by motion filed with the[ir] notice of appeal." V.R.E.C.P. 5(d)(2). Vallee has followed this procedural requirement, and we now take up its motion.

### I.        Status pursuant to 10 V.S.A. § 6085(c)(1)(B)

Vallee first contends that it is a party by right as a "landowner," which would grant it party status as to all criteria. Vallee explains that the project will expand a portion of Lower Mountain View Drive, and this expansion will cut into the driveway of a property to which Vallee holds a 30-year lease. The lease allows the location and dimensions of the driveway to be altered only with Vallee's approval. Vallee argues that its interest as a leaseholder qualifies it as a "landowner" under 10 V.S.A. § 6085(c)(1)(B).

In support of its argument, Vallee cites In re Stokes Communications Corp., 164 Vt. 30, 37 (1995). We do not find that this case helps Vallee's argument. The appellant in Stokes, in a challenge to Act 250 jurisdiction, argued that it effectively owned and controlled a one acre parcel by virtue of a 30-year lease. Id. The Supreme Court disagreed, explaining that while the lease provided appellant with "limited ownership interests," the lessor "remained the record owner of

1

the parcel," and this ownership could not be disregarded.  Id.  (citing Guild v. Prentis, 83 Vt. 212, 214 (1910)).

Vallee cites additional cases that analyzes whether a party has "control" over a parcel of land for the purposes of Act 250 jurisdiction.  In re Vitale, 151 Vt. 580, 584 (1989) (holding that although party did not have legal title to land, it had sufficient control over that land for Act 250 jurisdiction purposes); In re Ochs, 2006 VT 122, ¶ 17, 181 Vt. 541 (mem.) (holding that "there is no justifiable basis for distinguishing between owned lands and leased lands in determining what constitutes 'farming' for purposes of" determining exemption from Act 250 review).

Although Ochs and Vitale look at whether a party "controls" a parcel of land in making Act 250 jurisdictional determinations, we are reluctant to apply a similar "control" test to determine if a party has status as a right under 10 V.S.A. § 6085(c)(1)(B).  There are at least three reasons for this.

First, § 6085(c)(1)(B) gives party status to "the landowner."  The plain meaning of this term is clear, and does not extend to leaseholders.  See In re Albert, 2008 VT 30, ¶ 10, 183 Vt. 637 (mem.) (statutory terms should be given their plain meaning when possible); see also 10 V.S.A. § 6001(23) (defining "adjoining property owner" in part as "a person who owns land in fee simple").

Second, the statute gives those who are not landowners, but who occupy or control property, an opportunity to gain status through a separate provision.  10 V.S.A. § 6085(c)(1)(E) (granting party status to "any adjoining property owner or other person who has a particularized interest" protected by statute that may be affected by the Act 250 decision).  The existence of a separate provision that explicitly gives status to owners *and others* in sub-part (E) of the statute indicates that the drafters of the statute were aware that they could have broadened the scope of sub-part (B) beyond landowners, but chose not to do so.  The "other person who has a particularized interest" part of sub-part (E) also ensures that non-landowners will not be categorically denied party status.

Third, Vallee cites cases dealing with whether Act 250 jurisdiction is triggered (i.e. jurisdictional opinions), while the issue now before us is who should be granted party status to challenge an Act 250 decision (i.e. party status determination).  Because these determinations have different standards, we find the analogy between them inapt.  In jurisdictional determinations, the relevant statutes state that Act 250 jurisdiction is triggered by certain developments or subdivisions, 10 V.S.A. § 6081(a), that are "owned or controlled by a person," 10 V.S.A. § 6001(3)(A) and (19)(A).  The language "owned or controlled by a person" is clearly different from the "landowner" provision in § 6085(c)(1)(B).

For these reasons, Vallee's motion for party status pursuant to § 6085(c)(1)(B) is **DENIED**.

## II.  Status pursuant to 10 V.S.A. § 6085(c)(1)(E)

Vallee next argues that it should be granted party status on Criteria 1, 1(B), and 1(E) under 10 V.S.A. § 6085(c)(1)(E).  Under § 6085(c)(1)(E), "[a]ny adjoining property owner or other person who has a particularized interest protected by [Act 250] that may be affected by an act or decision by a district commission" is entitled to party status.

A party moving for status under § 6085(c)(1)(E) must demonstrate two things. First, it must show a "specified interest protected by Act 250 that is particular to [the movant], not a

general policy concern shared by the general public." In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Jul. 2, 2010) (Durkin, J.). Next, the moving party must demonstrate that the proposed project "may" adversely affect their particularized interest. Id. In order to show this causal connection, the moving party must provide an "offer of proof" to show that the potential impact is "more than mere speculation and theory." Id.

Vallee's factual assertions in its claim for party status are supported by an affidavit, and a supplemental affidavit, by Andres Torizzo, principal hydrologist of Watershed Consulting Associates, LLC. According to his affidavit, Mr. Torizzo has experience in hydrology, stormwater, and erosion control. Vallee's assertions are further supported by an affidavit by Donald W. Kretchmer, Principal Water Resource Scientist and owner of DK Water Resources Consulting, LLC, who has extensive experience working with total daily maximum loads (TMDL).

### a. Whether Vallee must show an increased impact

Broadly, Vallee argues that it meets the requirements for status under § 6085(c)(1)(E) because it has an interest in not having its property polluted and not having to take extra measures to manage pollution, and the DDI project may adversely impact those interests. These arguments are explored in detail below.

In its response, VTrans argues in part that Vallee should not have status under § 6085(c)(1)(E) because the possible adverse impact would not be worse than the adverse impact that Vallee experiences without the DDI project being built. In making this argument, VTrans effectively asks us to create an additional step to establishing party status under § 6085(c)(1)(E): in addition to showing a particularized interest and an adverse impact, a party would have to show that the prospective adverse impact would be worse than a pre-existing adverse impact. VTrans cites no legal authority or policy reason to add this third requirement, and we therefore decline to add it at this time.[1]

### b. Status under Criterion 1

Under Criterion 1, a subdivision or development may only receive an Act 250 permit if the reviewing body finds that it will not result in undue water or air pollution. 10 V.S.A. § 6086(a)(1). Vallee contends stormwater from the DDI project will carry undue water pollution onto its property and into its groundwater.

The assertion that the stormwater and pollutants will infiltrate into Vallee's groundwater is not supported by the affidavits. In fact, the first affidavit of Mr. Torizzo states that the stormwater runoff will be comingled with Vallee's stormwater and will be treated in Vallee's stormwater system. Torizzo Affidavit ¶ 13. There is no offer of proof as to the stormwater entering Vallee's groundwater. Vallee has therefore failed to show a specific, non-speculative potential impact regarding its groundwater. See Pion, No. 245-12-09 Vtec at 10–11 (Jul. 2, 2010)

---

[1] In its reply memorandum Vallee further notes that it intends to prove at trial that the Colchester Town Plan will require VTrans to add a sidewalk along Routes 2 and 7, which the DDI project as permitted does not include. The addition of this sidewalk will increase the total paved area of the DDI project. Vallee argues that this increase in paved area will lead to increased runoff onto its property. Even if Vallee proves that the DDI project must include such a sidewalk, there is nothing in the attached affidavits to support the assertion that those sidewalks would increase runoff to Vallee's property, and it is therefore not clear that Vallee has made a sufficiently specific and concrete offer of proof to support this assertion. See In re RCC Atlantic, Inc., No. 163-7-08 Vtec, slip op. at 9 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.).

3

(denying status under Criterion 1 due to failure to demonstrate causal connection to groundwater); Appeal of Rivers Dev., LLC Act 250 and LU Application, Nos. 7-1-05 Vtec and 68-3-07 Vtec, slip op. at 5 (Vt. Envtl. Ct. Jul. 3, 2007) (Durkin, J.) (same).

That the stormwater will carry pollutants onto Vallee's property, however, is borne out by the affidavits. We conclude that this alone is sufficient to support party status based on particularized interest. Vallee has an interest in keeping its property free from pollution, and the affidavits assert that stormwater from the DDI project may affect this interest by carrying pollution onto Vallee's property. Vallee further asserts that the water pollution that would be deposited onto its property would be undue because an alternative, cleaner stormwater treatment option may be available; and because the DDI project's stormwater system was designed in a way that does not comply with Department of Environmental Conservation (DEC) regulations.[2] See In re Rivers Dev., No. 68-3-07 Vtec, slip op. at 14–15 (Vt. Envtl. Ct. Mar. 25, 2010 (Durkin, J.) (pollution may be undue if it is "more than necessary [or] exceeding what is appropriate or normal") (citation omitted); In re Hawk Mountain Corp., 149 Vt. 179, 182 (1988) (court "must consider the applicable health and environmental conservation regulations" in determining whether project will result in undue water pollution).

These assertions are sufficient to establish a reasonable possibility that Vallee's particularized interest in keeping its property free from pollution may be adversely affected by water pollution from the DDI project. For this reason, Vallee's motion for party status under Criterion 1 is **GRANTED**.

### c. Status under Criterion 1(B)

Criterion 1(B) allows a permit to be granted when the applicant demonstrates that "the development or subdivision will meet any applicable Health and Environmental Conservation Department regulations regarding the disposal of wastes, and will not involve the injection of waste materials or any harmful or toxic substances into ground water or wells." 10 V.S.A. § 6086(a)(1)(B).

Vallee argues that the DDI project violates DEC regulations because it improperly uses "site balancing," which the rules allow only when treatment or control is impracticable. Vallee argues that treatment is not impracticable here, and therefore site balancing should not have been used. Vallee further argues that the DDI project miscalculates the area of "redevelopment" under Chapter 18 of the stormwater rules.

Not all stormwater is "wastewater" for purposes of this criterion. In re Rivers Dev., Nos. 7-1-05 Vtec, 68-3-07 Vtec, slip op. at 20 (Vt. Envtl. Ct. Mar. 25, 2010) (Durkin, J.). However, as noted above, Vallee has demonstrated a reasonable possibility that the DDI project was not designed in compliance with stormwater regulations, and that wastewater in the form of stormwater runoff may enter its property and affect its interest in keeping the property free from pollution. See In re North East Materials Group LLC, No. 35-3-13 Vtec, slip op. at 2–3 (Vt. Super. Ct. Envtl. Div. Aug. 21, 2013) (Walsh, J.) (granting party status under Criterion 1(B) to those who

---

[2] The reply memorandum, at 8–9, states that the increased discharges of chloride and phosphorus will violate Criterion 1(B). We take this to mean that the discharges would violate DEC regulations as set out in the memorandum's arguments regarding Criterion 1(B), specifically regarding the alleged improper use of site balancing and incorrect measurement of the project area.

4

demonstrated reasonable possibility that stormwater runoff from project would enter their property). For this reason, Vallee's motion for party status under Criterion 1(B) is **GRANTED**.

### d. Status under Criterion 1(E)

Under Criterion 1(E), the applicant must demonstrate that a proposed subdivision or development located "on or adjacent to the banks of a stream will, whenever feasible, maintain the natural condition of the stream, and will not endanger the health, safety, or welfare of the public or of adjoining landowners." 10 V.S.A. § 6086(a)(1)(E).

Vallee argues that the DDI project will increase chloride discharges into Sunnyside Brook, which is already impaired for chloride. Vallee contends that because Sunnyside Brook is impaired for chloride, a TMDL for chloride is required to return the brook to health. If the DDI project increases chloride discharges under a TMDL, others, including Vallee, will have to decrease their own chloride discharges. Vallee will be able to do this by upgrading its treatment system, which would be expensive, or by decreasing its use of de-icing salt in the winter, which may leave its property icier and less safe. These assertions are supported by Mr. Kretchmer's and Mr. Torizzo's affidavits.

Vallee has again demonstrated a reasonable possibility that the DDI project may impact its particularized interest regarding the condition of Sunnyside Brook and its own ability to discharge chloride into the brook. For this reason, Vallee's motion for party status under Criterion 1(E) is **GRANTED**.

### III.    Conclusion

For the reasons set out above, Vallee's motion for party status under Criteria 1, 1(B), and 1(E) is **GRANTED**.

Electronically signed on March 17, 2017 at 02:28 PM pursuant to V.R.E.F. 7(d).

_Tom Walsh_
_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

Notifications:
Jon T. Anderson (ERN 1856) and Alexander J. LaRosa (ERN 5814), Attorneys for Appellant R.L. Vallee, Inc.
Peter J. Gill (ERN 4158), Attorney for Interested Person Natural Resources Board

David L. Grayck (ERN 4510), Attorney for Additional Appellant Timberlake Associates, LLP
Justin E. Kolber (ERN 4303) and John K. Dunleavy (ERN 1949), Attorneys for Interested Person SOV AOT
Leslie A. Welts (ERN N/A) and Hannah W. Smith (ERN 6759), Attorneys for Interested Person Agency of Natural Resources
Elena M. Mihaly (ERN 8101), Attorney for Conservation Law Foundation